

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOMPO JAPAN INSURANCE INC. as subrogee )
of VICTOR COMPANY OF JAPAN, LIMITED )
and JVC AMERICAS CORP., )
)
Plaintiff, )
)
v. ) No. 02 C 7545
) Paul E. Plunkett, Senior Judge
GEANTO'S TRUCKING COMPANY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Sompo Japan Insurance Inc. ("Sompo" or "Plaintiff") has filed a subrogation claim against Geanto's Trucking Company ("Geanto's" or "Defendant") on behalf of its insureds, Victor Company of Japan, Limited ("JVC") and JVC Americas Corp. ("JVC Americas"). Sompo seeks recovery for claims it paid to JVC and JVC Americas relating to the theft of two thousand JVC camcorders from a Geanto's truck. Geanto's now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, claiming that this Court does not have subject matter jurisdiction; that the Illinois Insurance Guaranty Fund Act precludes Sompo's claim; that Geanto's was not a bailee of the camcorders; that Geanto's was not negligent; and that Sompo cannot support its claim for conversion. For the reasons set forth below, we grant Geanto's motion with regard to the conversion claim and deny the motion on all other claims.

## Facts

The following facts are undisputed. JVC and Phillips contracted with Yamato Transport to ship $2,000 JVC camcorders from Malaysia to a JVC warehouse in Aurora, Illinois. On October 22, 2001, the camcorders were shipped to O'Hare International Airport. Yamato hired Geanto's to transport the camcorders to the warehouse in Aurora. In order to deliver the large shipment by 6:00 a.m. on October 27, 2001, Geanto's loaded it on to a tractor-trailer one day earlier and stored it at the Kintetsu World Express ("Kintetsu") parking facility overnight. Some time in the middle of the night, the tractor and trailer were stolen. The tractor was later recovered with its ignition torn out and its dashboard damaged. The culprit has not yet been found.

The Kintestu parking facility is surrounded by a fence topped by barbed wire. A gate to the lot is locked at some point in the middle of the night when the last Kintetsu employee leaves for the day. It is lit and under the twenty-four hour surveillance of a system of security cameras. One of the cameras appears to have caught the theft on tape, though the camera was not trained on the tractor when the thief entered the lot. According to deposition testimony, the picture quality is low. A figure can be seen getting out of a car and moments later is inside the gate. The figure walks to the area where the tractor is parked. The video then shows the tractor being driven to the trailer containing the camcorders.

There were only two sets of keys for the stolen trailer containing the camcorders. Both were in Geanto's possession when the truck was left in the Kintetsu lot. The keys to each of the eighteen tractors that Geanto's owned were kept on keyrings in the Geanto's dispatch office. Each key ring also held a copy of the Kintetsu gate key. Geanto's had no written policy against copying the Kintetsu gate keys. Kintetsu had only two of its own keys to its gate, with one kept in a locked box

in a room accessible only to terminal managers, the other in a locked warehouse office when not in use. The gate was not damaged the morning after the theft.

A Geanto's Trucking form ("Shipping Pro") lists Yamato as the shipper and JVC Americas as the consignee. In the corner of the document is a paragraph in regular font and surrounded by a box that reads: "The liability of Geanto's Trucking is limited to Fifty ($50.00) Dollars per shipment unless a greater value is declared hereon and charges for such greater value paid." (Def.'s Mot. Summ. J. Ex. L.)

Sompo brings this diversity action on purely state law grounds, including breach of contract, bailment, conversion, and negligence.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion[1]

*Geanto's Limitation of Liability*

As a threshold matter, Geanto contends that the unsigned Shipping Pro partially filled out by Yamato limits Geanto's liability to fifty dollars, and as a consequence, this Court does not have jurisdiction in this diversity action. Because this case involves state claims and a domestic shipment that was, from its inception, intended to be intrastate, we will analyze the issue under Illinois law.[2] A carrier may limit its liability where: (1) the shipper may pay additional fees in exchange for an increase in the carrier's liability; (2) the shipper is afforded the opportunity to declare a higher value; and (3) the shipper is aware that it can declare a higher value. 810 Ill. Comp. Stat. § 5/7-309(2).

Here, Defendant's limitation of liability provision reads: "The liability of Geanto's Trucking is limited to Fifty ($50.00) Dollars per shipment unless a greater value is declared hereon and charges for such greater value paid." This language sufficiently complies with the first requirement of § 7-309(2). The second and third requirements, however, have not conclusively been met.

Plaintiffs argue that an issue of fact exists surrounding whether JVC was given a reasonable opportunity to declare a higher value. The words of the limiting provision do suggest that a shipper

---

[1]Plaintiff has requested that the Court deny Geanto's motion for summary judgment for non-compliance with Local Rule 56.1. Rather than laying out the facts in short numbered paragraphs as the rule directs, Defendant has submitted several facts that run on for several paragraphs and span nearly an entire page. (*See, e.g.*, Def.'s L.R. 56.1 Stmt. ¶8, 21.) This requires that the Court and opposing counsel wade through the record in an attempt to connect the citations, found at the end of the "paragraph," with the corresponding statements of fact. Additionally, Defendant has included legal conclusions where only material facts are proper. (*E.g., id.* ¶ 9.) Though the Court will not deny Geanto's motion for failure to comply with a local rule, Defendant and its counsel should not expect such lenient treatment in the future.

[2]Because caselaw relied upon by both parties involved shipments governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, the Court initially requested supplemental briefs as to whether federal or state law should adhere. Despite a disagreement between the parties, the Court, upon further review, finds that state law governs.

may opt to pay an additional sum in exchange for Geanto's increased liability for a shipment by writing that value on the form. However, the form does not contain a space to declare a higher value. Moreover, Geanto's does not provide any information explaining what the additional rates would be in proportion to its increased liability, either on the Shipping Pro or in a tariff. Thus, a reasonable jury could conclude that JVC did not have the opportunity to make an informed decision regarding whether or not to request a higher value. Therefore, Defendant is not entitled to summary judgment based on the liability limitation.

With regard to the third requirement, Defendant argues that a course of dealing existed between Yamato and Geanto's involving hundreds of shipments in which the same Shipping Pro was filled out by Yamato. Defendant asserts that through this course of dealing, JVC was aware of and assented to the liability limitation. Where a shipper has engaged in a series of transactions governed by contracts or invoices containing the same term limiting liability, the provision will be enforced. *Capitol Converting*, 965 F.2d at 395; *Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 764 (N.D. Ill. 1994); *see also Pac. Tall Ships Co. v. Kuehne & Nagel, Inc.*, 76 F. Supp. 2d 886, 890 (N.D. Ill. 1999) (finding an issue of fact was raised where the plaintiff produced evidence that the same term was not included in every invoice).

Defendant has pointed to testimony that supports a finding of a course of dealing, including that of a JVC manager acknowledging that the two companies had worked together for more than ten years (Def.'s Mot. Summ. J. Ex. C at 61), and of the president of Geanto's, who discusses the process by which Yamato fills out Defendant's form with each shipment. (*Id.* Ex. D at 95.) Plaintiff has not provided the Court with conflicting evidence, yet we must note that it has not been

given a meaningful opportunity to do so.[3] For this reason, and because we are denying the motion for summary judgment on other grounds, the issue of whether a course of dealing existed will be preserved for trial.

Finally, Plaintiff maintains that the liability limitation is invalid as a matter of law because it is unreasonable to limit Geanto's liability to fifty dollars for a shipment worth several hundred thousand dollars. We have found no authority to support a reasonableness requirement under Illinois law where the parties properly assented to a provision limiting liability. On the contrary, several courts have upheld similar provisions. *See e.g. Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 396–97 (7th Cir. 1992); *Hoogwegt U.S., Inc. v. Schenker Int'l, Inc.*, 121 F. Supp.2d 1228, 1232 (N.D.Ill. 2000).

*Illinois Insurance Guaranty Fund*

Geanto's next argues that Plaintiff's claim is void under the Illinois Insurance Guaranty Fund ("Fund") Act ("Act"), 215 Ill. Comp. Stat. 5/534.3 *et seq.* Defendant misconstrues the language of the Act and caselaw interpreting it to suggest that a solvent insurer such as Sompo cannot seek subrogated recovery from both the Fund and the insured of an insolvent insurer. As Defendant's insurer was declared insolvent and Sompo's claim exceeds the statutory Fund cap of $300,000, Defendant believes Sompo cannot recover. However, the Act merely provides that a claimant cannot seek to recover from the Fund more than the insured was entitled to under the insolvent company's policy or $300,000, whichever is less. The language Geanto's points to does not prohibit a claimant

---

[3]Defendant first raised the course of dealing issue in its supplemental brief, provided to the Court for oral arguments to determine the applicable law. The arguments were subsequently cancelled. Thus, Plaintiff did not have an opportunity to respond to Defendant's contentions.

from recovering the excess of its claim from the insured. For example, § 5/534.3(b)(v) states that the following is not a "covered claim" under the Fund:

> [A]ny claim for any amount due any reinsurer, insurer, insurance pool, or underwriting association as subrogated recoveries, reinsurance recoverables, contribution, indemnification or otherwise. No such claim held by a reinsurer, insurer, insurance pool, or underwriting association may be asserted in any legal action against a person insured under a policy issued by an insolvent company other than to the extent such claim exceeds the Fund obligation limitations set forth in Section 537.2 of this Code.

This language forbids a claimant such as Sompo from recovering *from the Fund* in excess of the amount that Geanto's would have been indemnified by its insurer had the insurer not become insolvent. *See Lucas v. Ill. Ins. Guar. Fund*, 367 N.E. 2d 469, 471(Ill. App. 1977) ("The Fund is . . . a substitution when the expected coverage ceases to exist."). There is no support for the idea that Sompo cannot collect the excess directly from Geanto's.

The obligations outlined in § 5/546(a) likewise do not void Sompo's claim. That section reads, in part:

> An insured or claimant shall be required first to exhaust all coverage provided by any other insurance policy, regardless of whether or not such other insurance policy was written by a member company, if the claim under such other policy arises from the same facts, injury, or loss that gave rise to the covered claim against the Fund.

In other words, if Geanto's had more than one insurance policy indemnifying it against cargo loss, and one insurer was insolvent while the others were solvent, Sompo would be obligated to seek recovery from the solvent insurers before looking to the Fund. *See Harrell v. Reliable Ins. Co.*, 631 N.E.2d 296, 297 (Ill. App. 1994). Defendant has not shown that the Act prohibits Sompo from recovering against Geanto's any amount in excess of its indemnity under the Fund. We are especially reluctant to bar Sompo's claim on this basis because Geanto's has not produced any

evidence that its insolvent insurer's policy would have covered Geanto's in this claim. We therefore have no basis from which to judge whether the Act is applicable. Therefore, Defendant is not entitled to summary judgment on this ground.

*Negligence Claims*

Geanto's claims it is entitled to judgment as a matter of law because Sompo cannot meet its burden to prove negligence under a bailment theory. First, Geanto's argues that a bailment was not created between Geanto's and Yamato. "A bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it." *Am. Ambassador Cas. Co. v. Jackson*, 295 Ill. App. 3d 485, 490 (1998). Geanto's contends that because Yamato and JVC dictated when and where the camcorders were to be delivered, it did not maintain control over the goods. Yet the facts show that a bailment was created. Yamato delivered the camcorders to Geanto's and directed Geanto's to deliver the goods to the JVC warehouse in Aurora the next morning in one shipment. What happened in between was under Geanto's control. Yamato and JVC never specified that Geanto's store the goods overnight in Kintetsu's lot. This fact alone refutes Defendant's argument that it did not retain possession of the goods.

Second, Geanto's argues that it was not negligent because it used reasonable care in storing the camcorders in the Kintetsu lot. Where a plaintiff alleges: (1) an express or implied agreement to create a bailment; (2) delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property

in a damaged condition, the defendant bailee is presumed to have been negligent. *Wausau Ins. Co. v. All Chicagoland Moving & Storage Co.*, 777 N.E.2d 1062, 1068 (Ill. App. 2002).

As we have already determined, there was a bailment. There is no dispute that JVC Americas, through Yamato, delivered the camcorders to Geanto's in good condition or that Geanto's accepted them but failed to return them to JVC Americas. Thus, Plaintiff has effectively established the presumption that Geanto's was negligent. Geanto's is unable to rebut this presumption by conclusively showing that it exercised reasonable care. Geanto's argues that it stored the truck containing the camcorders in a well-lit lot that was surrounded by a high barbed wire fence and was equipped with security cameras. But Illinois courts have found that evidence that goods are stored in a secured location is not sufficient evidence to overcome the presumption of negligence. *Magee v. Walbro, Inc.*, 171 Ill. App. 3d 774, 778–79 (1988); *James Coates Motors, Inc. v. Avis Rent-A-Car Sys., Inc.*, 312 N.E.2d 291, 293 (Ill. App. 1974).

Moreover, Defendant's policy governing the allocation of keys to the Kintetsu lot raises an issue of fact concerning Geanto's negligence. Geanto's had eighteen Kintetsu keys accessible to whomever drove a particular truck at a particular time. There was no written policy against copying the keys. The keys were kept in Geanto's dispatch office when not in use. We leave it for a jury to decide whether Geanto's adequately stored and distributed the keys or whether the number of keys made available to its employees created an atmosphere in which keys might be copied or misplaced. Defendant is therefore not entitled to judgment as a matter of law for Plaintiff's negligence claims.

*Claim for Conversion*

Plaintiff's claim of conversion, however, does not survive. Conversion is "an act or series of acts of willful interference, without lawful justification, with any chattel in a manner inconsistent with another's right, whereby that other person is deprived of the uses and possession of the chattel." BLACK'S LAW DICTIONARY 333 (7th ed. 1999). To prove conversion by a bailee, the plaintiff must establish: (1) a right in the property, (2) a right to immediate possession, (3) wrongful control by the defendant, and (4) a demand for possession. *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 369 (2004). We find that Sompo does not have sufficient evidence to convince a reasonable jury that Geanto's exercised wrongful control over the camcorders.

Plaintiff's conversion theory is based on "evidence that the thief had access to Geanto's tractor keys, the Kintetsu gate key, knowledge of the location of the camcorders and knowledge of the identity of the trailer containing the camcorders." The evidence is tenuously related, at best, to a theory that Geanto's was responsible for the theft. Plaintiff's conclusions are based entirely on the deposition testimony of David Wenckunas, a general manager for Geanto's who viewed the security video that showed the theft. The tape is described as grainy and "jerky," making it impossible to gauge the timing of the theft. (Def.'s Mot. Summ. J. Ex. F at 76–80.) Wenckunas concedes that the timing could show that the thief had the aforementioned knowledge, but suggests that the timing could also indicate the opposite.

This evidence amounts to no more than a mere scintilla. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"). The web of inferences a jury would be required to make to conclude that an agent of

Geanto's was responsible for the theft is simply too flimsy a foundation on which to support Plaintiff's conversion claim. For example, a jury must first infer that Geanto's key policy led to the Kintetsu gate key getting into the hands of a dishonest employee. Within this inference is another, that the allegedly negligent key policy was not so negligent as to allow a non-employee to gain access to the gate key. Next, the jury must infer, from the testimony of a Geanto's employee who viewed a security videotape (the tape itself has not been offered to the Court as evidence), that the timing of the theft—timing that cannot be verified—supports the inference that the thief had a key to the truck. There is no evidence from which a jury could infer that the thief knew the truck contained the camcorders other than the fact that the truck was stolen. Plaintiff has not produced sufficient evidence to tie Geanto's or one of it's employees to the theft. As a result, Plaintiff's claim for conversion must fail.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's claim for conversion is dismissed.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

**DATED:** AUG 2 4 2005